**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**STONE & THOMAS, Respondent.**

**No. 73–2167.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1974.

Decided Sept. 10, 1974.

958

Jay E. Shanklin, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Harding, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Charles P. Donnelly, Atty., N. L. R. B., on brief), for petitioner.

Eugene B. Schwartz, Cleveland, Ohio (Edward J. Simerka and Schwartz, Einhart & Simerka, Cleveland, Ohio, on brief), for respondent.

Before CRAVEN, RUSSELL and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

The National Labor Relations Board has petitioned this court for enforcement of its order to bargain issued against respondent, Stone & Thomas. Because of a possible violation of the *Savair*[1] rule, we deny enforcement and remand to the Board to redetermine whether the offer of the Union[2] to reduce the initiation fee was illegal within the meaning of sections 7 and 8 of the Act.[3]

I.

Sometime prior to the election the Union promised the employees in the unit that if the Union won the election the initiation fee would be reduced from $50 to $1.

*Savair* held that an election must be set aside upon a showing that the union in the course of its organizing campaign had promised to waive initiation fees for employees who signed "authorization" cards prior to the election. The *Savair* Court reasoned that by extending the offer only to those who signed before the election, the union could "paint a false portrait of employee support during its election campaign," 414 U.S. at 277, 94 S.Ct. at 499, thereby interfering with the employees' right under section 7 of the Act to "refrain from any or all [union] activities."

By way of contrast, the Court in dictum pointed out that union interests could legitimately be served by offering the waiver to *all* employees—whether they sign up before or after the election. 414 U.S. at 272–274, n. 4, 94 S.Ct. 495. "It is well established that an 'unconditional' offer to waive initiation fees, where the waiver offer is left open for some period of time after the election, is not coercive and does not constitute an unfair labor practice." 414 U.S. at 283, 94 S.Ct. at 502 (White, J., dissenting). The Board has since followed that distinction. B. F. Goodrich Tire Co., 209 NLRB No. 182, 85 LRRM 1529 (April 18, 1974).

The problem here is an ambiguity in the Union's preelection offer. Affidavits from employees submitted by the Company to the Board contained the inconclusive statement that a union official "stated that the initiation fee for warehouse employees would be reduced to $1.00 if the union won the election."

1. NLRB v. Savair, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). *Savair* was decided December 17, 1973, some nine months after the Board considered and rejected the Company's protest of the election on the ground of reduced initiation fee offer to employees.

2. International Brotherhood of Teamsters, etc., Local 697.

3. 29 U.S.C. §§ 157, 158.

Yet, the Union in a statement filed with the Board asserted that:

Petitioner made and authorized no such offer to the *assembled* workers. An offer to take in all *assembled* workers at a reduced initiation fee is the only offer that was made and the offer was not tied in any way to the results of the election.

Respondent's Brief at 18–19 (emphasis added).

 We cannot tell on this record whether the offer was unlawfully selective. Certainly there is left open the possibility that an offer was made in violation of the *Savair* rule. On remand the Board will redetermine whether the election may have been coerced by an unfair labor practice in light of *Savair*.

We have considered the Company's other objections to the election and find them to be wholly without merit.

## II.

The Board is empowered under section 9(b) of the Act to decide in each case the unit appropriate for collective bargaining, which determination "involves of necessity a large measure of informed discretion and . . . is rarely to be disturbed." Packard Motor Co. v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). In reviewing the Board's choice among alternative, appropriate units, we ask not whether the choice was the "right" one but whether the Board abused its discretion or proceeded in a manner violative of the Act. NLRB v. Quaker City Life Ins. Co., 319 F.2d 690 (4th Cir. 1963).

In selecting a unit of warehouse employees, the Board followed its previously declared criteria in determining the appropriateness of the unit: (1) the geographical separation of the warehouse from the retail store operations; (2) the degree of separate supervision of the warehouse employees' functions; and (3) the relative lack of integration among the warehouse employees and those engaged in other functions. A.

Harris & Co., 116 NLRB 1628, 1632 (1958).

In certifying the warehouse unit the Board neither abused its discretion nor proceeded in a manner violative of the Act.

Enforcement denied. Remanded.